IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM BUCCI,<br><br>   Defendant. | CRIMINAL ACTION<br>NO. 14-191 |

**OPINION**

**Slomsky, J.**                                                                                             **March 23, 2021**

**I.    INTRODUCTION**

Defendant William Bucci, who is serving a 78-month sentence, moves to reduce his sentence to time-served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 113.) In his Motion, Defendant avers that "a reduction in sentence is warranted because of [his] life-threatening medical condition and the drastic treatment that is required." (Id. at 3.) He asks the Court to grant his Motion because his "medical condition and the required treatment of it satisfy the 'extraordinary and compelling reasons' standard set forth [in] § 3582(c)(1)(A)(i)," and "[t]he procedural requirements of his BOP home confinement are at times interfering with his scheduled treatments . . . ." (Id. at 4.) Defendant also contends that reducing his sentence to time-served "equates to a sentence that is sufficient but not greater than necessary" under the 18 U.S.C. § 3553(a) sentencing factors. (Id. at 11.)

The Government opposes Defendant's Motion, stating that the Bureau of Prisons' ("BOP") alleged interference with Defendant's medical treatments is not an "'extraordinary and compelling reason' to end his sentence," and "[a]ny concern he has about his access to treatment at this time may readily be addressed" through alternative BOP procedures. (Doc. No. 115 at 4, 7.) The Government also notes that consideration of the § 3553(a) sentencing factors weigh against

1

granting the Motion because "defendant's criminal conduct was outrageous and ongoing, . . . he remains a danger to the community," and nine of his victims "vigorously oppose any further reduction in [his] sentence." (Id. at 5-6.)

For reasons stated infra, Defendant's Motion to Reduce Sentence (Doc. No. 113) will be denied.

## II.     BACKGROUND

### A.     Defendant's Prior Convictions

Defendant Bucci is presently serving a 78-month sentence for engaging in a "long-running scheme to defraud his clients, friends, family members, and others out of more than $3 million by convincing them to invest in, or loan him money for, non-existent business ventures." (Doc. No. 86 at 1.) Starting in 2004, Defendant convinced several individuals to invest in a non-existent olive oil and wine business, promised them "a rate of return of at least 10% on the investment, and "falsely guaranteed . . . that he would repay principal and interest." (Doc. No. 16 at 3 ¶ 6; see also id. ¶ 7.) Defendant also told several individuals that he was purchasing real estate, convinced them to invest in this venture, and "falsely represented that he would be able to pay the victims back after he closed the real estate deal." (Id. at 8 ¶ 5.) Defendant convinced a total of 28 victims to "entrust[] in excess of $3.2 million" with him for these fraudulent business ventures. (Id. at 9 ¶ 11.) In addition to defrauding numerous victims, Defendant filed fraudulent tax returns for the years 2007 through 2011. (See id. at 12-16.)

On June 8, 2016, Defendant pled guilty to (1) securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 (Count 1); (2) mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2-5); and (3) mortgage fraud, in violation of 18 U.S.C. § 1014 (Count 11). (See Doc. No. 95 at 1.) Defendant also pled nolo contendere to subscribing false income tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 6-10). (See id.) On April 24, 2017, the Court sentenced

Defendant to a total of 78-months' imprisonment on all Counts,[1] followed by 5 years' supervised release. (See id. at 2-3.)

On June 23, 2017, Defendant began serving his 78-month sentence at Federal Correctional Institution ("FCI") Schuylkill. (See Doc. No. 113 at 7.) In March 2020, Defendant noticed "a growing mass on the right side of his neck . . . . reported the mass to the medical staff at FCI Schuylkill," and allegedly received no treatment for it. (Id. at 8.) Thereafter, Defendant sent a request for compassionate release to the Warden of FCI Schuylkill "due to increased susceptibility to death or serious illness due to COVID-19." (Id. at 6.) The request was granted, and on September 10, 2020, the BOP released Defendant from FCI Schuylkill "to serve the remainder of his term of imprisonment on home confinement." (Id. at 8.) Defendant has served approximately 43 months of his total sentence, and by Defendant's calculation, with good time credit his sentence is projected to end on January 4, 2023. (See id. at 7-8.)

### B.   Defendant's Instant Motion to Reduce His Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

On February 4, 2021, Defendant filed the instant Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 113.) In the Motion, Defendant asks the Court to reduce his sentence to time-served "[b]ecause the Bureau of Prisons can grant [Defendant] no further relief" and because "[t]he BOP's home confinement program has thus far operated in a manner that has interfered with the diagnosis and treatment of [his] cancer." (Id. at 6, 10.) After being released to home confinement to serve the remainder of his sentence, Defendant avers he sought permission from the BOP "to go to visit with his primary care physician" but "permission to see his doctor took a month to receive." (Id. at 8.) On December 29, 2020, after seeing his physician,

---

[1]   Specifically, the Court sentenced Defendant to a term of 78 months' imprisonment on Counts 1-5 and 11 to run concurrently to each other, and a term of 36 months' imprisonment on Counts 6-10 to run concurrently to each other and to Counts 1-5 and 11. (See Doc. No. 95 at 2.)

an MRI was performed on Defendant. (See id.) The results of the MRI prompted Defendant's physician to refer him to an otolaryngology oncologist at Jefferson Medical Center in Philadelphia, who diagnosed Defendant with stage 3 squamous cell carcinoma. (See id. at 4, 9, 35, 40.)

Since receiving this diagnosis, Defendant alleges that "he has had daily problems with the BOP procedure for leaving his house each day to go for his chemoradiation treatment." (Id. at 10.) While "[h]e has sent the schedule for his treatments by email to the coordinator of his home confinement on more than one occasion," Defendant states that "each morning, when he has called to say that he is leaving the house to go to Jefferson Hospital for his treatment, he has been told that the approval to go is not in the system and he may not go." (Id.)

Based on his cancer diagnosis and treatment approval issues, Defendant claims that his sentenced should be reduced to time-served. (See id. at 4.) He avers that "extraordinary and compelling reasons for a sentence reduction exist" under the United States Sentencing Guideline application notes "as a result of [him] 'suffering from a serious physical or medical condition.'" (Id. at 9.) In addition, Defendant contends he has "met many of the original sentencing goals of 18 U.S.C. § 3553(a)." (Id. at 10.) He understands that he "could be spending the entirety of his sentence incarcerated at a BOP facility" rather than in home confinement which, according to Defendant, "strengthens his resolve to respect the law and avoid future crimes." (Id. at 11.) Defendant also asserts that "[r]educing his sentence would not endanger the public" because his "age and medical condition make it highly improbable that he would commit any future crime." (Id.)

### C. The Government's Response in Opposition to Defendant's Motion

On March 4, 2021, the Government filed a Response in Opposition to the instant Motion, in which it asks the Court to deny Defendant's Motion for several reasons. (See Doc. No. 115.) First, the Government argues that Defendant "has not provided any compelling reason for such

extraordinary relief" because, despite his cancer diagnosis, "complaints regarding the current conditions of his modest degree of confinement" are not "extraordinary and compelling" reasons to reduce his sentence further. (Id. at 1, 4-5.) Second, it notes that Defendant's complaints about BOP home confinement approval procedures can be remedied through alternative channels that he has not attempted to use.[2] (See id. at 5.) Third, the Government avers that relief is not warranted under the § 3553(a) sentencing factors because Defendant's criminal conduct "was outrageous and ongoing, and he remains a danger to the community." (Id.) Notably, nine of Defendant's victims reached out and "vigorously oppose any further reduction in [his] sentence."[3] (Id. at 6.) "In these circumstances," the Government thus contends "that [Defendant] continues to present a danger of financial harm to the community, and that reduction of the sentence would not fulfill the purposes of sentencing." (Id. at 7.)

---

[2] The Government notes that Defendant can seek to obtain expedited responses to administrative requests pursuant to 28 C.F.R. § 542.18, which "provide[s] for an expedited response to administrative requests 'determined to be of an emergency nature which threatens the inmate's immediate health or welfare.'" (Doc. No. 115 at 5.)

[3] The Government includes the following excerpts from some of the victims:

> Victim M.B. wrote: "Bucci's actions to defraud his family, friends, and long-time associates . . . were totally devoid of compassion. Many of us are still dealing with the financial impacts of Mr. Bucci's actions, and will be for some time to come." Victim D.L. wrote: "Bucci maliciously lured many of his friends and acquaintances out of millions of dollars for his own personal greed." And victim J.B. wrote: "He destroyed countless lives during his years of being a despicable human being and thief." According to victim D.Y.: "Bill Bucci exploited his friends, family, clergy and people with special-needs – every one of them with much fewer means than he. He has not expressed remorse or hinted of any responsibility for his actions."

(Doc. No. 115 at 6-7.)

### III. DISCUSSION

#### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[4] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—

---

[4] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion. The Motion states as follows:

> Mr. Bucci made a request for compassionate release from FCI Schuykill [sic] in 2020 due to increased susceptibility to death or serious illness due to COVID-19. That request was granted and he was placed on home confinement by the Bureau of Prisons. . . . Because the Bureau of Prisons can grant Mr. Bucci no further relief, the issue of compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is ripe for consideration.

(Doc. No. 113 at 6.) The Government does not dispute that Defendant "made an earlier request to the warden and his motion is authorized under the statute." (Doc. No. 115 at 2 n.1.)

6

> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13, n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e.,

7

    a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or mental condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. The defendant

  (i) is at least 65 years old;

  (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

  (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family circumstances.

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[5]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotations omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility

---

[5] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

10

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion to Reduce Sentence Will Be Denied

Defendant's Motion to Reduce Sentence will be denied. He applied to the BOP for compassionate release, and his request was granted. He is currently serving the remainder of his sentence in home confinement. Although he has been diagnosed with squamous cell carcinoma, this condition does not justify reducing his sentence further to time-served. Moreover, the relevant § 3553(a) sentencing factors weigh against a reduction or further modification of his sentence.[6] Each of these conclusions is discussed in turn.

#### 1. Defendant's Cancer Diagnosis Does Not Present an Extraordinary and Compelling Reason for Reducing His Sentence Further to Time-Served

Defendant contends that his "medical condition and the required treatment of it satisfy the 'extraordinary and compelling reasons' standard set forth under § 3582(c)(1)(A)(i)." (Doc. No. 113 at 4.) Though Defendant was "released from FCI Schuylkill to serve the remainder of his term of imprisonment on home confinement," he avers that "[t]he procedural requirements of his BOP home confinement are at times interfering with his scheduled treatments and are adding unwarranted stress and discomfort." (Id. at 4, 8.) The Government acknowledges Defendant's allegations "that he has been diagnosed with Stage 3 HPV+ squamous cell carcinoma" and "has been undergoing treatment at a local hospital," but maintains that his "complaints regarding the

---

[6] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

current conditions of his modest degree of confinement" are not extraordinary and compelling reasons to end his sentence. (Doc. No. 115 at 4-5.)

Defendant's recent squamous cell carcinoma diagnosis does present a COVID-19 risk factor. The Centers for Disease Control and Prevention ("CDC") lists cancer as a condition which can subject adults to an increased risk of severe illness from COVID-19. See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar. 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html. However, Defendant has been serving the remainder of his sentence in home confinement since September 10, 2020 and is no longer significantly exposed to an actual, non-speculative risk of contracting COVID-19 at FCI Schuylkill. Therefore, "there is no extraordinary and compelling reason to reduce his sentence" under § 3582(c)(1)(A)(i). United States v. Bradley, No. 13-20622-01, 2020 WL 4676377, at * 2 (E.D. Mich. Aug. 12, 2020).

In procedurally analogous cases, courts have declined to reduce a defendant's sentence where the BOP has granted release to home confinement, and the defendant suffers from serious health conditions. See, e.g., Bradley, 2020 WL 4676377; United States v. Tagliaferri, No. 13-115, 2019 WL 6307494, at *1 (S.D.N.Y. Nov. 25, 2019). In Bradley, the defendant moved for compassionate release due to the spread of COVID-19 and "sought to reduce his sentence to time served or modification of his sentence to serve the remainder on supervised release or home confinement." Bradley, 2020 WL 4676377, at *1. The defendant noted that he suffered from "diabetes, hypertension, hyperlipidemia and obstructive arterial disease." Id. at *2 (internal quotations and citation omitted). After filing his motion, the BOP "released him from incarceration to serve the remainder of his sentence under home confinement," which the BOP "concluded . . . [was] an adequate location" for serving the balance of his sentence. Id. at *1-2.

But the defendant still "maintain[ed] his motion for relief" and asked the court to "enter an [o]rder modifying its [j]udgment to reduce [his] sentence to time served" or change his two sentences to run concurrently. Id. at *1 (internal quotations and citations omitted). He argued that "[a] reduction in sentence to time served [was] . . . consistent with the sentencing guidelines and is consistent with BOP's determination of the risk factors." Id. at *2. Nevertheless, the court denied defendant's motion because "[d]efendant's risk of contracting COVID-19 has decreased since leaving his dorm-style room [in prison] and returning home to live with his wife." Id. "Now that [d]efendant is serving the remainder of his term on home confinement, there is no extraordinary and compelling reason to reduce his sentence." Id.

Here, the Court agrees with the rationale in Bradley and finds that there is no extraordinary and compelling reason to reduce Defendant Bucci's sentence further to time-served. While Defendant is suffering from a serious physical condition,[7] he is serving the latter half of his 78-month sentence at home where his risk of contracting COVID-19 is small compared to his risk of contracting the virus at FCI Schuylkill. Moreover, now that Defendant is in home confinement, he has greater access to cancer treatment and medical care. As the Government notes in its Response, any concerns Defendant has about his access to treatment and alleged delays in treatment approval by the BOP's home confinement program can be raised through "an administrative remedy process"[8] which, to the Government's knowledge, Defendant "has not attempted to use . . . to present any complaint." (Doc. No. 115 at 5, 7.) For these reasons,

---

[7]   See U.S.S.G. § 1B1.13 n.1(A)(ii)(I).

[8]   See supra note 2.

13

Defendant's cancer diagnosis, in light of his release to home confinement, does not establish an extraordinary and compelling reason justifying a further modification or reduction in sentence.[9]

### 2. The § 3553(a) Factors Weigh Against Reducing Defendant's Sentence to Time-Served

The relevant § 3553(a) factors also do not support reducing Defendant's sentence to time-served. First, the Court has examined the nature and circumstances of the offenses and Defendant's history and characteristics. See § 3553(a)(1). Although Defendant asserts that he "understands the gravity of his past mistakes and poses no safety risk to the public" (Doc. No. 113 at 11), the offenses that led to his incarceration are serious crimes, and nine of his victims vehemently oppose a sentence reduction (see Doc. No. 115 at 6-7).[10] Defendant "engaged in a long-running scheme to defraud his clients, friends, family members, and others out of more than $3 million by convincing them to invest in, or loan him money for, nonexistent business ventures." (Id. at 5.) Defendant then used the victims' money to "support his own high-end lifestyle, to pay off extensive credit card debt, and to pay earlier victims." (Id. at 6.) Defendant claims that his present situation "strengthens his resolve to respect the law and avoid future crimes" (Doc. No. 113 at 6), but given the circumstances surrounding his years-long fraudulent scheme involving over 20 victims, there is no assurance that he would be deterred from committing additional crimes if released from home confinement.

The Court also has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See § 3553(a)(2)(A)-(C). Defendant has served

---

[9] Defendant is sixty-four years old. (See Doc. No. 113 at 11 n.7); U.S.S.G. § 1B1.13 n.1(B). He does not state in his Motion that he is a caregiver to minor children. See § 1B1.13 n.1(C). Thus, these factors are not relevant here.

[10] See supra note 3.

14

roughly half of his 78-month sentence. (See Doc. No. 115 at 1.) His crimes warrant the sentence he received.[11] For this reason, reducing his sentence to time-served at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

Lastly, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See § 3553(a)(6). Defendant received a sentence within the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities. To reduce Defendant's sentence further would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor reducing Defendant's sentence.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence (Doc. No. 113) will be denied. An appropriate Order follows.

---

[11] In United States v. Pawlowski, the Third Circuit held the following regarding 18 U.S.C. § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).